**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 14-CIV-21851-BLOOM**

HDR ARCHITECTURE, P.C.,

     Appellant,

v.

MAGUIRE GROUP HOLDINGS, *et al*. and
CHARTIS SPECIALTY INSURANCE
COMPANY, LEXINGTON INSURANCE
COMPANY AND CERTAIN OTHER
AFFILIATES OF CHARTIS INC.,

     Appellees.

_____/

In re:                                Bankr. Case No. 11-39347-BKC-RAM
                                      (Jointly Administered)

MAGUIRE GROUP HOLDINGS, INC., *et al*.,

     Debtors.

_____/

**<u>OPINION AND ORDER</u>**

     **THIS CAUSE** is before the Court upon the appeal by HDR Architecture, P.C. ("HDR" or "Appellant"). Appellant seeks review of a final order issued by the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court") dated April 1, 2014, denying Appellant's motion to reopen the underlying chapter 11 cases and to modify the discharge injunction. Bankr. ECF No. [846]; *In re Maguire Grp. Holdings, Inc.*, 508 B.R. 504 (Bankr. S.D. Fla. 2014) (the "Ruling"). The Court has considered Appellant's Initial Brief, ECF No. [22], Appellee's Brief of Maguire Group Holdings, et al. (the "Reorganized Debtors"), ECF No. [28], Appellee's Brief of Chartis Specialty Insurance Company and related parties ("Chartis"), ECF No. [27], Appellant's Reply Brief, ECF No. [33], and the record in this case. For the reasons that follow, the Ruling is reversed and remanded.

1

# I.       BACKGROUND

Pursuant to a prepetition agreement (the "HDR Agreement") entered into in 1990 between HDR's predecessor-in-interest and Maguire Group, Inc. ("Maguire", one of the Debtors), the parties provided architectural, design and related services at a public works project located in Niantic, Connecticut (the "York Project").  Maguire served as a sub-consultant to HDR at the York Project under the HDR Agreement.  In the HDR Agreement, Maguire agreed to indemnify HDR for negligent acts, errors, and omissions attributable to Maguire and to maintain a professional liability insurance policy to protect HDR from liability arising out of Maguire's performance of professional services at the York Project.

In early 2008, the State of Connecticut (the "State") commenced a prejudgment remedy ("PJR") proceeding pursuant to Conn. Gen. State. § 52-278a, naming as defendants HDR, Maguire, and several other parties.  Connecticut procedure allows a party to seek pre-suit judicial relief, such as an attachment on property, to secure the anticipated judgment.  *See* Conn. Gen. Stat. § 52-278c.  At the time the applicant initiates the PJR proceeding, it submits a proposed unsigned copy of the suit papers, but the civil action is not yet initiated.  *Id*.  It is not until after the PJR proceeding is completed that the applicant finalizes the suit papers, has them served, and returns them to court to officially commence the action.  Conn. Gen. Stat. § 52-278j.  The State's application for a PJR was subsequently granted.  The proceedings were thereafter stayed for several years.

Chartis was Maguire's insurer under several insurance policies.  As a result of the State's filing of the PJR proceeding in 2008, Maguire placed Chartis on notice of a potential claim against its then current professional liability policy (the "Chartis Policy").  The Chartis Policy is a "claims-made" architects and engineers professional liability and contractors

pollution liability policy which contains no retroactive date limitation and was in effect from January 1, 2008 to January 1, 2009.  The liability limits under the Chartis Policy are $3 million for each claim and $3 million in the aggregate.

On October 24, 2011, the Debtors filed for protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").  On April 12, 2012, the Debtors filed their Third Amended Plan of Reorganization under chapter 11 of the Bankruptcy Code, Bankr. ECF No. [300] (the "Plan").  The confirmation hearing on the Plan, as later amended, was held on July 11, 2012 (the "Confirmation Hearing").  At the conclusion of the hearing, the Bankruptcy Court ruled that the Plan would be confirmed, and on July 25, 2012, the Bankruptcy Court entered its order confirming the Plan, Bankr. ECF No. [701] (the "Confirmation Order").  The Confirmation Order and the Plan provide for the discharge of all prepetition claims against the Debtors and a broad injunction in favor of the reorganized Debtors.  On August 28, 2012, the Debtors filed a notice indicating that the effective date of the Plan had occurred one day earlier. On May 1, 2013, the Debtors filed their Amended Final Report and Motion for Entry of Final Decree, Bankr. ECF No. [786], wherein they certified that the cases had been fully administered, described the Debtors actual payment and preparations for payment at the distribution rates provided in the Plan for all general unsecured claims, and represented that "[a]ll administrative claims and expenses have been paid in full, or appropriate arrangements have been made for the full payment thereof."  On May 6, 2013, the Bankruptcy Court entered the Final Decree and ordered the closing of the Debtors' chapter 11 cases.  Bankr. ECF No. [788], [789].   The Final Decree provided that "all future payments under the plan of reorganization shall be disbursed in accordance with the plan."

According to the Bankruptcy Court, two key settlements paved the way for plan

confirmation.  The Debtors negotiated a full and final settlement of their liability arising from or related to the York Project (and certain other projects on which the Debtors worked in Connecticut).  Bankr. ECF No. [638] (the "Connecticut Settlement").  The Connecticut Settlement resolved over $14.4 million in claims asserted by the State against Maguire, including a claim for not less than $13 million related to the York Project.  Under the terms of the settlement, the State was authorized to deduct up to ten percent of the invoiced amount both from future invoices submitted by the Debtors and from certain pending invoices, until such time as $97,889.86 was paid in full.  The Connecticut Settlement explicitly provided that it had "no preclusive effect vis-à-vis third parties . . . [i]n particular, with respect to [York Project claim], (i) the striking of the claim asserted by [the State] shall have no effect on the claims regarding the underlying matters against any non-debtor, third-party in any other proceedings outside of the Debtors' chapter 11 cases."  On July 17, 2014, the Bankruptcy Court approved the Connecticut Settlement, Bankr. ECF No. [686] (the "Connecticut Settlement Order"), which provided, among other things, that the State was precluded from recovering from the Debtors or reorganized Debtors on any existing claim, specifically including those claims related to the York Project.

The second key settlement, between the Debtors and Chartis, was reached at the Confirmation Hearing.  After the Debtors submitted the Connecticut Settlement to the Bankruptcy Court for approval, Chartis filed an expedited application for payment of an administrative expense claim, Bankr. ECF No. [678] (the "Chartis Administrative Expense Motion"), based on Maguire's self-insured retention obligations to Chartis under various insurance policies.  Chartis asserted that the Debtors had agreed to abide by their obligations under various policies issued by Chartis because of their ongoing need for insurance coverage

during the pendency of their chapter 11 proceedings, and to treat their insurance policies as executory contracts and assume them under the Plan. Chartis interpreted the Connecticut Settlement as permitting the State to pursue its claims against the Debtors as a nominal party in order to access applicable insurance proceeds. *See* Bankr. Case. Hr'g Tr. Jul. 11, 2012, Bankr. Case. ECF No. [702] ("Confirmation Hr'g Tr."). Chartis anticipated incurring attorney's fees in connection with potential claims covered by those policies that would trigger payment by Maguire of the $250,000 self-insured retention obligation on each of at least four separate claims. Both the Debtors and the Bankruptcy Court understood the Connecticut Settlement to preclude the State from asserting and being able to recover on any claims against the Debtors, or from the Debtors' insurers in their capacity as insurers of the Debtors on account of the claims submitted by the State against the Debtors. *See* Connecticut Settlement Order ¶ 4; Confirmation Hr'g Tr.

Chartis agreed to compromise its $1,000,000 administrative expense claim in an agreement that was memorialized and approved by the Bankruptcy Court, Bankr. ECF No. [692] (the "Chartis Settlement Order"). Under the Chartis Settlement Order, Chartis was granted an "administrative expense claim in an amount not to exceed $150,000" for "amounts that would have been payable by the Debtors, but for the Debtors' bankruptcy, under the terms and conditions of any insurance policy issued to the Debtors that was expired as of the Petition Date (a "Prior Policy") when such amounts are paid by Chartis." Chartis Settlement Order ¶ 2. The Debtors and Chartis agreed that the $150,000 payment need not be paid on the Plan's effective date. *Id*. The Reorganized Debtors' obligation to pay amounts under the administrative expense claim provision arises only if Chartis incurs obligations attributable to a Prior Policy. *Id*. In addition to the $150,000 payment obligation, the Chartis Settlement Order

provided for a separate obligation, which permitted Chartis to elect one claim under a Prior Policy to receive "assumed status" (the "Assumed Claim").  The Reorganized Debtors were required to comply with all policy obligations implicated by the Assumed Claim as though that single Prior Policy had been assumed in connection with the Plan – meaning that the Reorganized Debtors would pay any applicable deductible or applicable self-insured retention payment obligation with respect to the Assumed Claim in accordance with the terms and conditions of the single Prior Policy, in an amount not to exceed $250,000.  Chartis Settlement Order ¶ 3.  The Debtors reported forty open claims that had a "potential for a claim" under one of the Prior Policies.  Confirmation Hr'g Tr.  Based on the information it had at the time of confirmation, Chartis elected as the Assumed Claim a claim wholly unrelated to the York Project, the State or HDR.  Like the Connecticut Settlement Order, the Chartis Settlement Order explicitly provided that "[n]othing in this Order shall be deemed to amend, supplement, or modify the terms of or any rights and obligations under any insurance policy issued to the Debtors by Chartis, or affect the rights of any non-debtor third-party with respect to any insurance policy issued to the Debtors by Chartis."

HDR received timely notice of all relevant pleadings in the Debtors' chapter 11 proceedings.  HDR received copies of the proposed Plan and disclosure statement and was given notice of the Confirmation Hearing.  Counsel for HDR did not appear at the Confirmation Hearing.  HDR did not object to the Connecticut Settlement Agreement or the Chartis Settlement Agreement.  HDR did not seek relief from the Connecticut Settlement Order or the Chartis Settlement Order.  HDR did not assert indemnification rights against Maguire with respect to the York Project in a proof of claim, and did not otherwise attempt to assert or preserve its indemnification rights in the Debtors' bankruptcy.

On February 14, 2013 – after the Debtors' Plan had been confirmed and became effective but before their chapter 11 cases were closed – the State of Connecticut commenced suit against HDR and a number of other defendants to recover damages resulting from alleged construction and design defects at the York Project (the "Bacon Action").  The State asserted substantially the same claims in the Bacon Action as it had in the PJR proceeding.  Due to the Connecticut Settlement, the State did not name Maguire as a defendant in the Bacon Action.  The State alleges damages in excess of $18 million.

Ten days after the Debtors cases were closed, HDR moved to reopen them and modify the plan discharge injunction for the limited purpose of permitting HDR to name Maguire as a third-party defendant and to bring claims against Maguire in the Bacon Action (the "HDR Indemnification Claim").  HDR represented that any damages for which the Reorganized Debtors might be found liable would be recoverable solely from Chartis under the Chartis Policy.  The Reorganized Debtors acknowledge that the Chartis Policy provides Maguire with liability coverage for the HDR Indemnification Claim.

The Reorganized Debtors objected, arguing that the relief sought by HDR would impair the Reorganized Debtors' "fresh start" because the HDR Indemnification Claim would trigger the $150,000 payment to Chartis under the Chartis Settlement Order.  Chartis joined in the Reorganized Debtors' objection, arguing that it would be prejudiced if HDR were permitted to pursue an indemnification claim against Maguire.

In the Ruling, the Bankruptcy Court denied HDR's motions to reopen the Debtors cases and to modify the discharge injunction.  The Bankruptcy Court determined that "if HDR is permitted to pursue the HDR Indemnification Claim, the reorganized Debtor will be harmed."  Ruling at 13; 508 B.R. at 512.  It therefore held that HDR's pursuit of its indemnification claims

in the Bacon Action would impair the Debtors' "fresh start," violate section 524(a)(2) of the Bankruptcy Code, and did not fall within the section 524(e) allowance for post-discharge prosecution of a prepetition action based on third-party indemnification rights.  Ruling at 11-14; 508 B.R. at 510-12.  The Bankruptcy Court explained that its analysis turned on the nature of the Debtors' $150,000 payment obligation under the Chartis Settlement.  According to the Bankruptcy Court, "[a]lthough called an administrative expense claim, the $150,000 obligation is better described as a contingent obligation of the reorganized Debtors."  Ruling at 6; 508 B.R. at 508.

> [T]he $150,000 administrative expense is not a fixed, non-contingent expense that the Debtors must pay under the plan.  The fact that Chartis and the Debtors referred to this obligation as an 'administrative expense' is a misnomer.  Rather, the obligation to reimburse Chartis is a contingent obligation triggered only if Chartis incurs expenses in defending any claims under the Prior Policies.

Ruling at 13; 508 B.R. at 512.  In addition, the Bankruptcy Court noted that "the Debtor agreed to the $150,000 potential reimbursement amount without any contemplation that reimbursable expenses could include the costs of defending any claims relating to the York Project, including the HDR Indemnification Claim, because the Connecticut Settlement Agreement, together with the Plan's discharge injunction, resolved with finality all liability arising out of the alleged construction and design defects at the York Project, including any potential liability of the Debtors to HDR."  *Id.*  The Bankruptcy Court also found that HDR's requested relief would prejudice Chartis because Chartis entered into the Chartis Settlement and selected the Assumed Claim "based on its justified belief" that the universe of claims it might have to defend did not include any claims arising out of the York Project.  Ruling at 16; 508 B.R. at 513.

HDR timely appealed the Ruling.  The appeal is fully briefed and ripe for adjudication.

## II.    JURISDICTION & STANDARD OF REVIEW

This Court has jurisdiction to hear this appeal of a final order issued by the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1).

A bankruptcy court's legal conclusions and application of the law to the facts of a given case are reviewed *de novo*, and its factual findings for clear error.  *Carrier Corp. v. Buckley (In re Globe Mfg. Corp.)*, 567 F.3d 1291, 1296 (11th Cir. 2009) (reviewing court "review[s] the bankruptcy court's factual findings for clear error, and its legal conclusions *de novo*"); *Club Associates v. Consol. Capital Realty Investors (In re Club Associates)*, 951 F.2d 1223, 1228 (11th Cir. 1992) ("Factual findings by the bankruptcy court are reviewed under the limited and deferential clearly erroneous standard."); *Lorenzo v. Wells Fargo Bank (In re Lorenzo)*, 518 B.R. 92, 94 (S.D. Fla. 2014) ("The district court reviews the factual findings of a bankruptcy court for clear error, and reviews *de novo* a bankruptcy court's conclusions of law of and application of the law to the particular facts of the case."); FED. R. BANKR. P. 8013 ("[f]indings of fact . . . shall not be set aside unless clearly erroneous).  "Under *de novo* review, a Court independently examines the law and draws its own conclusions after applying the law to the facts of the case, without regard to decisions made by the Bankruptcy Court."  *In re Mut. Ben. Offshore Fund, Ltd.*, 508 B.R. 762, 769 (S.D. Fla. 2014) (citing *Kaiser Aerospace and Elecs. Corp. v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.)*, 244 F.3d 1289, 1295 (11th Cir. 2001)).  Reviewing for clear error, "findings of fact are not clearly erroneous unless, in light of all of the evidence, [the reviewing court is] left with the definite and firm conviction that a mistake has been made."  *Westgate Vacation Villas, Ltd. v. Tabas (Int'l Pharmacy & Discount II, Inc.)*, 443 F.3d 767, 770 (11th Cir. 2005).

Additionally, the determination of certain matters committed to the discretion of the

bankruptcy court is reviewed for abuse of discretion.  *See*, *e.g.*, *Phillips v. Phillips (In re Phillips)*, 2013 WL 1899611, at *1 (M.D. Fla. May 7, 2013) ("Where a matter is committed to the discretion of the bankruptcy court, the district court must affirm unless it finds that the bankruptcy court abused its discretion.") (citing *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1238 (11th Cir. 2006)); *Charter Crude Oil Co. v. Petroleos Mexicanos (In re Charter Co.)*, 125 B.R. 650, 654 (M.D. Fla. 1991) (same, regarding admission of evidence) (citing *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1374 (5th Cir. 1981)); *Quraeshi v. Dzikowski (In re Quraeshi)*, 289 B.R. 240, 242 (S.D. Fla. 2002) (same, regarding equitable determinations) (citing *Hatcher v. Miller (In re Red Carpet Corp. of Panama City Beach)*, 902 F.2d 883, 890 (11th Cir. 1990)).

The Eleventh Circuit has explained that a bankruptcy court's interpretations of its own orders are accorded significant deference "unless it clearly abused its discretion."  *Finova Capital Corp. v. Larson Pharm. Inc. (In re Optical Techs., Inc.)*, 425 F.3d 1294, 1300 (11th Cir. 2005).  Similarly, every appellate court to have considered the issue has held that a bankruptcy court's decision whether to reopen a case pursuant to 11 U.S.C. § 350(b) is reviewed on an abuse of discretion standard.  *See Clark v. Strand (In re Clark)*, 556 F. App'x 656, 657 (9th Cir. 2014) ("[W]e review the bankruptcy court's denial of a motion to reopen a bankruptcy case for abuse of discretion."); *Redmond v. Fifth Third Bank*, 624 F.3d 793, 798 (7th Cir. 2010) ("[T]he denial of a motion to reopen a closed bankruptcy case is reviewed for abuse of discretion."); *In re Double J Operating Co., Inc.*, 37 F. App'x 91 (5th Cir. 2002) ("[T]he decision to reopen a bankruptcy case is committed to the sound discretion of the bankruptcy judge and will not be overturned absent abuse of discretion.") (citing *Faden v. Ins. Co. of N. Am. (In re Faden)*, 96 F.3d 792, 796 (5th Cir. 1996)); *Patriot Portfolio, LLC v. Weinstein (In re Weinstein)*, 164 F.3d

677, 686 (1st Cir. 1999) ("We review the bankruptcy court's discretionary decision to reopen the case and reconsider its prior decision for an abuse of discretion."); *Donaldson v. Bernstein*, 104 F.3d 547, 551 (3d Cir. 1997) ("We review a bankruptcy court's decision whether to reopen a case pursuant to 11 U.S.C. § 350(b) on an abuse of discretion standard."); *see also Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 300 B.R. 564, 567 (S.D.N.Y. 2003) (A bankruptcy court's decision whether to reopen debtor's case is committed to the sound discretion of the bankruptcy court.").

"A bankruptcy court abuses its discretion when its ruling is founded on an error of law or on misapplication of the law to the facts." *Park Nat. Bank v. Univ. Ctr. Hotel, Inc.*, 2007 WL 604936, at *1 (N.D. Fla. Feb. 22, 2007). *See also Amlong & Amlong*, 500 F.3d at 1238 ("A decision that is contrary to the law plainly is an abuse of discretion."); *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1096 (11th Cir. 2004) (explaining that "applying the law in an unreasonable or incorrect manner" constitutes an abuse of discretion); *West v. Smith (In re Cecil)*, 2012 WL 3231321, at *2 (M.D. Fla. Aug. 3, 2012) ("A court abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts.  In its application, the abuse of discretion standard is nearly indistinguishable from the clearly erroneous standard.").

## III.   DISCUSSION

Despite the several issues stated by the parties on appeal, resolution of this matter turns on whether the Bankruptcy Court correctly determined that allowing Appellant to reopen the Debtors' chapter 11 cases and modify the discharge injunction would impair the Reorganized Debtors' "fresh start" in violation of 11 U.S.C. § 524 and the prerogatives of the Bankruptcy

Code.  Appellant seeks ultimately to pursue indemnification claims against the Debtors[1] solely for purposes of seeking available insurance proceeds from Chartis.  The Bankruptcy Court concluded that, based on the specific facts here, doing so would inevitably result in economic loss to the Debtors and, therefore, Appellant's post-discharge prosecution of its prepetition rights would result in a violation of the section 524(a) injunction.  While the Ruling required the Bankruptcy Court to interpret its own orders and exercise its discretion whether to reopen the Debtors' chapter 11 cases, that underlying legal determination – which this Court reviews *de novo* – is dispositive.  Because the Bankruptcy Court's application of the law was in error, the Court reverses the Ruling and remands for consideration of Appellant's motions to reopen the chapter 11 cases and modify the discharge injunction in accordance with this opinion and order.

### A.    The Section 524(e) Exception to the Discharge Injunction

The Bankruptcy Code's goal of securing a debtor's "fresh start" is embedded in section 524(a) of the Bankruptcy Code, which establishes a permanent injunction against any attempt to collect a debt from a reorganized debtor that was discharged under the terms of the debtor's confirmed chapter 11 plan of reorganization.  Section 524(a) provides that a discharge obtained in a chapter 11 case "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived."  11 U.S.C. § 524(a)(2).  As the Eleventh Circuit has explained, "[a] bankruptcy discharge and the concomitant injunction against subsequent actions [provided by section 524(a)] are designed to give the debtor a financial 'fresh start.'"  *Owaski v. Jet Fla. Sys., Inc. (In re Jet Fla. Sys., Inc.)*, 883 F.2d 970, 972 (11th Cir. 1989); *see also Walker v. Wilde (In re Walker)*, 927 F.2d 1138,

---

[1] While the Debtors chapter 11 cases were jointly administered, Appellant seeks to prosecute its third-party claims specifically against Maguire.

1142 (10th Cir. 1991) ("The intent of this post-discharge injunction is to protect debtors . . . in their financial 'fresh start' following discharge.").

Subsection (e) of section 524 makes clear, however, that the discharge in no way affects the liability of any other entity, or the property of any other entity, for the discharged debt. *See* 11 U.S.C. § 524(e).[2]  Courts recognize that section 524(e) "permits a creditor to bring or continue an action directly against the debtor for the purpose of establishing the debtor's liability when . . . establishment of that liability is a prerequisite to recovery from another entity." *In re Walker*, 927 F.2d at 1142.  Thus, pursuant to section 524(e), a creditor may seek to establish a debtor's nominal liability in order to collect on an insurance policy maintained by the debtor.  *See Houston v. Edgeworth (In re Edgeworth)*, 993 F.2d 51, 54-55 (5th Cir. 1993); *Green v. Welsh*, 956 F.2d 30, 33-34 (2d Cir. 1992).  That is, the debtor's discharge does not affect the liability of the debtor's insurer for damages caused by the debtor and that the creditor may seek to recover solely from the insurer.

The Eleventh Circuit addressed this issue directly in *In re Jet Fla. Sys., Inc.*, 883 F.2d 970 (11th Cir. 1989).  There, the Eleventh Circuit permitted a plaintiff to pursue a post-discharge defamation suit against the reorganized debtor in order to seek access to potential insurance proceeds.  The court held that, because the protections of section 524(a) exist only for the debtor, when "[t]he Debtor and his property are not subject to any risk and maintenance of the suit does not frustrate the policy of the Bankruptcy Code in giving the Debtor a fresh start in his economic life," the discharge injunction is not implicated.  *Id*. at 974.  It explained:

> [T]he provisions of 524(a) apply only with respect to the personal liability of the debtor.  When it is necessary to commence or continue a suit against a debtor in order, for example, to establish liability of another, perhaps a surety, such suit

---

[2] That subsection provides:  "Except as provided in subsection (a)(3) of this section, discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."  11 U.S.C. § 524(e).

would not be barred.  Section 524(e) was intended for the benefit of the debtor but was not meant to affect the liability of third parties or to prevent establishing such liability through whatever means required.  Certainly, the obligation of an insurer can be viewed as such a secondary liability under the provisions of section 524(e).

*Id*. at 973 (citations omitted).

Numerous courts have agreed that a tort claimant who seeks to proceed against a discharged debtor only for the purpose of recovering against an insurer does not impair a debtor's fresh start or violate the discharge injunction.  *See*, *e.g.*, *Hawxhurst v. Pettibone Corp.*, 40 F.3d 175, 181 (7th Cir. 1994) (permitting modification of discharge injunction to pursue suit to recover insurance proceeds, explaining that a "nominal suit, if successful, will not create a personal liability of the debtor and therefore will neither deplete the debtor's assets or otherwise interfere with the administration of the bankruptcy proceeding, nor hinder the debtor's fresh start at the close of the proceeding"); *First Fid. Bank v. McAteer*, 985 F.2d 114, 118 (3d Cir. 1993) ("[T]he protection from liability afforded the debtor under the Code does not affect the liability of the debtor' s insurers.  Courts, relying on 11 U.S.C. § 524(e), have allowed claimants to proceed with tort claims against the debtor for the purpose of collecting from the debtor's liability insurer.  Thus, the creditor remains free to collect the full amount of the original obligation from any non-debtor party such as a guarantor or insurer."); *Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992) ("Numerous courts, confronted with a tort claimant who seeks to proceed against a discharged debtor only for the purpose of recovering against an insurer, have relied on §§ 524(a) and 524(e) and the fresh start policy in concluding that the discharge injunction does not bar such a suit."); *In re Fine Air Servs. Corp.*, 2005 WL 3190398, at *4 (Bankr. S.D. Fla. May 17, 2005) ("11 U.S.C. § 524(e) . . . was specifically enacted to allow creditors to recover the debt of the debtor 'from any third party' such as the debtor's insurer").

The linchpin in this analysis is whether the post-discharge action interferes with the

debtor's fresh start.  The Bankruptcy Court held that "any economic loss incurred by a debtor due to the post-discharge prosecution of a prepetition action would result in a violation of the section 524(a) injunction."  Ruling at 12; 508 B.R. at 511.  Several courts support that position. *See*, *e.g.*, *Deippo v. Kmart Corp.*, 335 B.R. 290, 298 (S.D.N.Y. 2005) ("[T]he plaintiff can maintain the action against the debtor only if the debtor bears none of the expense of the defense."); *Bank of India v. Trendi Sportswear, Inc.*, 2002 WL 84631, at *5 (S.D.N.Y. Jan. 18, 2002) (citation omitted) (mentioning that "all of the cases that allow claims to continue against a bankrupt defendant" require that the "debtor bears none of the expense of the defense"); *Greiner v. Columbia Gas Transmission Corp. (In re Columbia Gas Transmission Corp.)*, 219 B.R. 716, 721 (S.D.W. Va. 1998) (denying relief from discharge injunction where debtor was "responsible for costs of defending the lawsuit"); *Perez v. Cumberland Farms, Inc.*, 213 B.R. 622, 624 (D. Mass. 1997) ("Any economic loss to the Debtor would . . . result in the violation of the statutory injunction of 11 U.S.C. § 524(a).").  Other courts have taken a less rigid view of what undermines a debtor's fresh start, recognizing that "ancillary consequences" to the reorganized debtor of a creditor's pursuit of a post-discharge indemnity claim will not bar modification of the discharge injunction.  *See*, *e.g.*, *In re Loewen Grp. Inc.*, 2004 WL 1853137, at *26 (E.D. Pa. Aug. 18, 2004); *Stoneking v. Histead (In re Stoneking)*, 222 B.R. 650, 656 (Bankr. M.D. Fla. 1998); *Granger v. Harris (In re Harris)*, 85 B.R. 858, 860 (Bankr. D. Colo. 1988).

**B.    Ramifications of the Chartis Claim For the Debtors' "Fresh Start"**

The Bankruptcy Court grounded its Ruling on the nature of the Debtor's $150,000 obligation to Chartis under the Chartis Settlement which would be triggered by Appellant's pursuit of the HDR Indemnification Claim in the Bacon Action, as well as the ramifications of

the Connecticut Settlement for the HDR Indemnification Claim.  The Bankruptcy Court erred both in construing the Connecticut Settlement Order and Chartis' claim, and – more importantly – in identifying the implications of Chartis' claim for the Debtors' "fresh start."

### 1.    Third-Party Rights Under the Connecticut Settlement Order

The Bankruptcy Court held that "the Connecticut Settlement Agreement, together with the Plan's discharge injunction, resolved with finality all liability arising out of the alleged construction and design defects at the York Project, *including any potential liability of the Debtors to HDR*" (emphasis added).  To the extent the Bankruptcy Court interpreted the Connecticut Settlement Order to compromise HDR's rights under the HDR Agreement or to bar HDR from accessing proceeds of the Chartis Policy, that interpretation is belied by the Order itself and is contrary to established law.

Settlement agreements compromising claims in bankruptcy, including where approved by a bankruptcy court, are treated as contracts in accordance with normal contract-interpretation principles.  *See*, *e.g.*, *In re W.B. Care Ctr., LLC*, 419 B.R. 62, 65 (Bankr. S.D. Fla. 2009) (bankruptcy court orders approving claim settlement agreements are treated as contracts); *In re May*, 2006 WL 5940803, at *3 (Bankr. N.D. Ga. Sept. 29, 2006) ("judgment entered pursuant to a settlement agreement is treated as having both contract and judgment characteristics"); *Berardinelli v. Gen. Am. Life Ins. Co. (In re Gen. Am. Life Ins. Co. Sales Practices Litig.)*, 357 F.3d 800, 804 (8th Cir. 2004) ("Once approved, a settlement agreement is interpreted as a contract.") (citation omitted); *Yassian v. Goodrich (In re Rodeo Canon Dev. Corp.)*, 2010 WL 6259764, at *9 (9th Cir. B.A.P. Oct. 28, 2010) ("Generally speaking, we interpret a settlement agreement approved by court order like we would interpret any other contract."); *Am. LaFrance, LLC v. RT Jedburg Commerce Park, LLC (In re Am. LaFrance, LLC)*, 461 B.R. 267,

271-72 (Bankr. D. Del. 2011) (orders approving claim settlement are treated as contracts); *Enter. Energy Corp. v. United States (In re Columbia Gas Sys., Inc.)*; 146 B.R. 106, 113 (D. Del. 1992) (holding that it is appropriate to treat a judicially-approved settlement agreement like a contract in the bankruptcy context) (citations omitted).

"It is axiomatic that a contract cannot bind a nonparty." *R/V Beacon, LLC v. Underwater Archeology & Exploration Corp.*, 2014 WL 4930645, at *3 (S.D. Fla. Oct. 1, 2014) (citing *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1073 (11th Cir. 2003) ("Generally, a contract does not bind one who is not a party to the contract, or who has not in some manner agreed to accept its terms."); *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."); *Norfolk S. Ry. Co. v. Groves*, 586 F.3d 1273, 1281-82 (11th Cir. 2009) ("Furthermore, it is a tenet of contract law that a third-party cannot be bound by a contract to which it was not a party." (citation omitted))).

The Connecticut Settlement explicitly provided that it had "no preclusive effect vis-à-vis third parties . . . [i]n particular, with respect to [York Project claim], (i) the striking of the claim asserted by [the State] shall have no effect on the claims regarding the underlying matters against any non-debtor, third-party in any other proceedings outside of the Debtors' chapter 11 cases." The Connecticut Settlement Order incorporated and explicitly restated those limitations. On its own terms, the Connecticut Settlement Order had no preclusive effect on the State's ability to sue HDR with respect to the York Project, as it has in the Bacon Action, or on HDR's indemnification rights against Maguire under the HDR Agreement.

The Connecticut Settlement Order – a bankruptcy court order approving the Debtors' settlement with the State – could not have compromised HDR's indemnification rights even had

17

it purported to do so.   HDR was not a party to the Connecticut Settlement Agreement. Admittedly, HDR did not object to the Connecticut Settlement Order or the Confirmation Order.   Nor did it participate in the Confirmation Hearing.   It had no reason and was not required to.  The Connecticut Settlement did not seek to restrict HDR's indemnification rights. Nor could it have.  It sought only to settle the State's claims against the Debtors and to preclude the State from asserting and being able to recover on any claims against the Debtors, or from the Debtors insurers in their capacity as insurers of the Debtors *on account of the claims submitted by the State against the Debtors*.  *See* Connecticut Settlement Order ¶ 4 ("[The State] also shall not, and agrees that it will not, reassert the [State's c]laims against the Debtors, the reorganized debtors or their respective estates, or the insurers of the Debtors, solely in their capacity as insurers of the Debtors with respect to the [State's c]laims, in any other proceeding in any forum.").  In as much as the Ruling interpreted the Connecticut Settlement Order to bind and restrict HDR, it was clearly erroneous.

This accords with the undisputed law in this Circuit that a creditor is not required to actively participate in a bankruptcy proceeding in order to seek relief from the plan discharge injunction so as to pursue insurance proceeds.  *See Jet Florida*, 883 F.2d at 974 (holding that section 524(a) did not require a plaintiff to have filed a notice of claim in order to establish Debtor's liability solely as a prerequisite to recovery from a debtor's insurer); *In re Fine Air Servs.*, 2005 WL 3190398 (Bankr. S.D. Fla. 2005) ("[T]he filing or non-filing of a proof of claim . . . would be completely irrelevant to the issue of whether a creditor may pursue a debtor's liability insurer after a discharge order has been entered in the debtor's bankruptcy case except to the extent that an ultimate judgment of liability against a debtor's liability insurer would have to be reduced to the extent that the creditor received a distribution on its claim in

the bankruptcy case.").   Forcing a creditor seeking indemnification solely against a debtor's insurer to file a proof of claim and appear in the debtor's bankruptcy or risk losing its indemnification rights would upend the purpose of section 524(e).

### 2.    Nature of the Chartis Claim

The Bankruptcy Code defines a "claim" to include contingent obligations of the debtor. *See Perkins v. Haines*, 661 F.3d 623, 626-27 (11th Cir. 2011) ("Although antecedent debt is not defined, the term 'debt' is stated to include 'liability on a claim,' and 'claim' is broadly defined as the 'right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.'" (citing 11 U.S.C. §§ 101(5), (12))); *Midwest Holding # 7, LLC v. Anderson (In re Tanner Family, LLC)*, 556 F.3d 1194, 1196 (11th Cir. 2009) ("[A] debtor incurs a debt to a creditor when the creditor has a claim against the debtor, *even if the claim is unliquidated, unmatured, unfixed, or contingent.*").   "It is generally agreed that a debt is contingent if it does not become an obligation until the occurrence of a future event, but is noncontingent when all of the events giving rise to liability for the debt occurred prior to the debtor's filing for bankruptcy."   *Mazzeo v. U.S. (In re Mazzeo)*, 131 F.3d 295, 303 (2d Cir. 1997).

Section 503 of the Bankruptcy Code provides for the allowance of administrative expense claims.   "The threshold requirement for an administrative expense is that it be actual and necessary to the preservation of the estate; the benefit must run to the debtor and be fundamental to the conduct of its business."   *McMillan v. Joseph Decosimo and Co. (In re Das A. Borden & Co.)*, 131 F.3d 1459, 1463 (11th Cir. 1997) (quoting *Varsity Carpet Servs., Inc. v. Richardson (In re Colortex Indus., Inc.)*, 19 F.3d 1371, 1383 (11th Cir. 1994)); *see also* 11

19

U.S.C. § 503(b).  A pre-petition claim – such as a contingent claim for indemnification or contribution based on a pre-petition obligation – can be elevated and transformed into a post-petition administrative claim, but only where the debtor assumes the pre-petition contract such that the existence of a post-petition transaction can be seen as benefiting the bankruptcy estate. *See*, *e.g.*, *In re New Power Co.*, 313 B.R. 496, 506 (Bankr. N.D. Ga. 2004) (holding that claim for attorney fees payable under creditor's pre-petition service agreement that debtor did not assume did not arise out of post-petition transaction between creditor estate and was not payable on administrative priority basis as "actual and necessary" cost of preserving estate, even though fees were incurred post-petition); *FIE Corp. v. United Capitol Ins. Co. (In re Firearms Imp. & Exp. Corp.)*, 131 B.R. 1009, 1015 (Bankr. S.D. Fla. 1991) (holding that insurer's claim, based on debtor's failure to fund self-insured retention, was not entitled to administrative expense priority because debtor's funding obligation arose out of pre-petition contractual relationship with insurer, and insurer's post-petition performance of policy obligations despite debtor's failure to fund retention could not be deemed a benefit it had bestowed upon bankruptcy estate); *(MBNA America Bank, N.A. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.)*, 275 B.R. 712, 723 (Bankr. D. Del. 2002) (denying administrative expense status to claim where there was "no post-petition transaction or relationship between [debtor] and [creditor] which would elevate [creditor's] claims from mere breaches of a pre-petition contract to breaches of a post-petition contract entitled to administrative status"); *In re Chateaugay Corp.*, 102 B.R. 335, 352 (Bankr. S.D.N.Y. 1989) (denying administrative expense status to contingent indemnity loss claims where contingency occurred post-petition, explaining that upon occurrence of the triggering event "the contingent claim simply becomes a liquidated one; it, however, is not thereby elevated to the status of a post-petition claim").

The Bankruptcy Court held that the Debtors' $150,000 payment obligation under the Chartis Settlement was an administrative expense claim in name only. Rather, it explained, the obligation should be understood as a "contingent obligation of the reorganized Debtors . . . triggered only if Chartis incurs expenses in defending any claims under the Prior Policies." The Bankruptcy Court's characterization of the claims allowed through the Chartis Settlement Order appears to be based on a misapplication of the relevant law.

To qualify as an administrative expense, a claim must provide value to the estate independent of a debtor's pre-petition obligations. The Chartis Settlement resolved Chartis' assertion of administrative expense claims arising from its alleged provision of insurance coverage to the Debtors post-petition based on the understanding that the Debtors had agreed to treat their insurance policies as executory contracts and assume them under the Plan. That is, Chartis maintained in its Administrative Expense Motion that the Debtors' pre-petition obligations were transformed into post-petition obligations of the estate based on the Debtors' assumption of their policies and Chartis' continued provision of coverage post-petition. The Chartis Settlement Order explicitly stated that "Chartis is granted an Administrative Expense Claim (as such term is defined in the Plan) in the amount of $150,000." The $150,000 payment obligation was accounted for under Article II of the Plan, pertaining to payment of administrative expense claims. On its face, the Chartis Settlement provided for an administrative expense claim for value provided by Chartis to the Debtors under assumed contracts. Read as written, the Order, consequently, conferred administrative expense status on Chartis' claim.

Bankruptcy Courts are afforded significant deference in interpreting their own orders. But the Bankruptcy Court's recasting of the Debtor's $150,000 payment obligation as a pre-

petition claim appears to flatly contradict the Chartis Settlement Order and the treatment of Chartis' claim as an administrative expense under the Plan.

The Bankruptcy Court appears to have relied on a false dichotomy between an administrative expense claim and a contingent claim.  Nothing in the Bankruptcy Code nor case-law construing it prohibits contingent administrative expense claims.  "To the contrary, whenever an entity provides goods or services to a trustee or debtor-in-possession, it has a contingent administrative claim."  *In re Caldor, Inc.-NY*, 240 B.R. 180, 191 (Bankr. S.D.N.Y. 1999); *see also In re SunCruz Casinos LLC*, 342 B.R. 370, 379 (Bankr. S.D. Fla. 2006) (holding that creditor was required to have filed administrative expense claim based on debtors' contingent post-petition obligations).  The Debtors' $150,000 obligation to Chartis may have been contingent, but it was allowed by the Bankruptcy Court and accounted for under the Plan as an administrative expense.

### 3.      The Chartis Claim Cannot Impair the Debtors' "Fresh Start"

Regardless of whether Chartis' $150,000 claim is understood as a contingent administrative expense claim or a contingent pre-petition claim, payment on that claim by the Reorganized Debtors cannot implicate their "fresh start."  As a result, Appellant's assertion of the HDR Indemnification Claim against Maguire does not violate the Debtors' discharge injunction, but rather, falls squarely within the permissive space of section 524(e).

The fact that an allowed claim is contingent does not mean that, once the triggering contingency occurs, the required payment impairs the reorganized debtor's fresh start.  Quite the opposite.  It means that treatment of the claim was contemplated by the confirmed plan of reorganization, and that distribution on that allowed claim pursuant to the terms of the plan cannot, by definition, disturb the debtor's fresh start.  Here, Chartis' claims (the $150,000

contingent obligation and the up-to-$250,000 Assumed Claim) were allowed by the Bankruptcy Court.   The fact that the Debtors were not made to remit $150,000 to Chartis along with disbursement on all other administrative expense claims (i.e., on the Plan's effective date) only demonstrates that Chartis' claim was contingent, and that the triggering event had not yet occurred.

The Bankruptcy Court explained that "the Debtor agreed to the $150,000 potential reimbursement amount without any contemplation that reimbursable expenses could include the costs of defending any claims relating to the York Project, including the HDR Indemnification Claim." That may be.  But all it means is that the Debtors failed to foresee that the triggering contingency would arise.   Not that the current turn of events could not have been predicted. After all, for all the Debtors (and the Bankruptcy Court) stress that HDR knew about the PJR proceeding, the Debtors' bankruptcy, and the possibility that they would need to dip into the Chartis Policy proceeds under the HDR Agreement, the Debtors knew about the State's claim against non-debtors like HDR and Maguire's obligation to indemnify HDR under the HDR Agreement.   In fact, non-party rights were expressly carved out of both the Connecticut Settlement and the Chartis Settlement.   In any event, people are often wrong about future developments.  But the inability to foreshadow does not foreclose the claim.  The Debtors may have settled with Chartis never imagining that the State would revive its claims against HDR, and HDR would invoke its indemnification rights under the HDR Agreement.  They may well have attempted to strike a different bargain with Chartis had they so imagined.  Hindsight is twenty-twenty.  But they did, in fact, settle for a $150,000 obligation.  The Bankruptcy Court approved that settlement, allowed that claim, and confirmed the Plan.  Payment of the $150,000 claim amount cannot impair the Debtors' fresh start.

The only other possible interpretation of the Ruling is that the Bankruptcy Court, in effect, valued Chartis' contingent claim at zero.  The Chartis Settlement Order provided for a $150,000 obligation for "amounts that would have been payable by the Debtors, but for the Debtors' bankruptcy, under the terms and conditions of any insurance policy issued to the Debtors that was expired as of the Petition Date (a "Prior Policy") when such amounts are paid by Chartis."  It also excepted that claim from satisfaction on the Plan's effective date under Article II of the Plan.  In the Ruling, the Bankruptcy Court determined that, at the time it approved the settlement, neither the Debtors nor Chartis expected Chartis to ever pay out on a Prior Policy or for the Debtors to incur the $150,000 obligation.  That may amount to a valuation by the Bankruptcy Court of Chartis' $150,000 claim at zero.  But if that is how the Bankruptcy Court interpreted the Chartis Settlement and Confirmation Orders, HDR can certainly pursue the HDR Indemnification Claim without disturbing the Debtors' fresh start.

Either way – reviewing the Bankruptcy Court's analysis and application of section 524 of the Bankruptcy Code *de novo* – the Bankruptcy Court erred in determining that, by triggering the Debtors' $150,000 obligation to Chartis, the HDR Indemnification Claim would impair the Debtors' fresh start.  Because payment of an allowed claim cannot impair a debtor's fresh start, Appellant's pursuit of the HDR Indemnification Claim does not violate the discharge injunction.  Pursuant to section 524(e), Appellant may seek to establish Maguire's nominal liability in the Bacon Action in order to collect on the Chartis Policy.

### C.    Prejudice to Chartis

Because this matter is remanded to the Bankruptcy Court for consideration of Appellant's motions to reopen and modify consistent with this opinion and order, the Court need not determine whether the Bankruptcy Court was correct in entertaining Chartis'

arguments on HDR's motions and considering prejudice to Chartis in issuing the Ruling.  But the Court notes the following:  The Bankruptcy Court explained that:

> Allowing the HDR Indemnification Claim to proceed would materially change the risk and benefit analysis that was the foundation of the Chartis Settlement Agreement . . . Chartis would be bound by an agreement it negotiated with the Debtors in reliance on the fact that all liability in connection with the alleged construction and design defects at the York Project, including the nominal liability of Maguire, had been extinguished . . . [and] is too late for Chartis to elect to treat the HDR Indemnification Claim as the "assumed" claim under the terms of the Chartis Settlement Order.

Ruling at 16; 508 B.R. at 513-14.  In fairness to Chartis, it does appear to have anticipated the possibility that the State would sue one of the other PJR proceeding defendants – i.e., HDR – who would then attempt to gain access to the Chartis Policy proceeds.  *See* Confirmation Hr'g Tr. at 11-17.  But in compromising its administrative expense claims and selecting the "assumed claim," it read too broadly the language and capabilities of the Connecticut Settlement Order with regard to HDR's indemnification rights.  Chartis may be able to argue, in the Bacon Action, that the State has already released or waived the claims it now asserts against HDR, at least with respect to Chartis.  *Id.*  But that issue is not before this Court.

## IV.   CONCLUSION

The Bankruptcy Court's determination that Appellant's pursuit of the HDR Indemnification Claim in the Bacon Action against Maguire as a nominal defendant only and solely in order to gain access to proceeds of the Chartis Policy impaired the Debtors' fresh start and violated the discharge injunction was in error. That decision is, therefore, **REVERSED**. This cause is **REMANDED** to the Bankruptcy Court for consideration of Appellant's motions to reopen the Debtors' chapter 11 cases and to modify the discharge injunction consistent with this decision.

The Clerk is directed to **TRANSMIT** notice of this Order to the Bankruptcy Court in

accordance with all relevant rules and procedures, and is further directed to **CLOSE** this case.

**DONE AND ORDERED** in Fort Lauderdale, Florida this 24th day of December, 2014.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record